## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM HAAS,

   Plaintiff,

  v.

MERRICK GARLAND, ATTORNEY
GENERAL, *et al*.,

   Defendants.

No. 4:19-CV-02152

(Chief Judge Brann)

## MEMORANDUM OPINION

**MARCH 24, 2022**

When I ascended to the federal bench in 2013, I presumed that the cases brought before me, even if ultimately unsuccessful, would be predicated on legitimate grievances and have at least some bases under the law—this is, after all, federal court. Sadly, that is not always the case. Even in federal court, plaintiffs (represented by attorneys who should know better) routinely file lawsuits utterly devoid of merit. This is one such case.

Plaintiff William Haas sued his former employer, the United States Bureau of Prisons, as well as the Department of Justice and the Attorney General of the United States alleging sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. But Haas never filed a sex discrimination claim with his agency's Equal Employment Opportunity office. He did not allege, and has not identified facts showing, that he experienced sex-based harassment or disparate

treatment. He likewise identifies no actionable adverse employment decision or instances of retaliation. In short, Haas's claims fail on every front. Accordingly, the Government's motion for summary judgment is granted.

## I.    BACKGROUND

Starting in 2005, Plaintiff William Haas worked as a Correctional Lieutenant with the United States Bureau of Prisons ("BOP") at the Federal Correctional Complex in Allenwood, Pennsylvania.[1] He was assigned to the Federal Correctional Institution ("FCI Allenwood"), a medium-security facility.[2]

In early 2013, FCI Allenwood's Office of Internal Affairs opened an investigation into Haas for possible violations of the facility's security protocols.[3] Specifically, while Haas was supervising officers in a high-security area, a BOP staff member did not go through the screening process and brought in a cellphone.[4] Additionally, Haas personally violated the screening process by walking around the metal detector after entering the facility.[5]

That April, Haas received a performance evaluation for his work from the prior year.[6] The reviewer, FCI Allenwood Captain Christopher Bergen, rated

---

[1]    Doc. 23-3, Ex. C (July 9, 2014 Haas Decl.) at 1–2.

[2]    *Id.*

[3]    Doc. 23-5, Ex. E (Aug. 19, 2014 Recktenwald Decl.) at 6–7.

[4]    *Id.*

[5]    *Id.* at 6 ("[A]s a lieutenant he entered the facility as well and did not follow any of our screening procedures. So he, unfortunately, he was turned in for an investigation based on him being a lieutenant supervising officers . . . he didn't even follow our own procedures for security in such a high, you know, risk area.").

[6]    Doc. 23-18, Ex. R (Apr. 10, 2013 Evaluation).

Haas's performance in three categories: (1) Organizational Results;

(2) People/Workforce & Communication/Teamwork; and (3) Taxpayer Value.[7] For

each category, Haas received a rating on a five-point scale:

> Outstanding=5
> Excellent=4
> Achieved Results=3
> Minimally Satisfactory=2
> Satisfactory Unsatisfactory=U.[8]

Bergen rated Haas as "Outstanding" for categories two and three

("People/Workforce & Communication/Teamwork" and "Taxpayer Value") and

"Excellent" for category one ("Organizational Results").[9] Adding these ratings

together, Haas received an "Overall Performance Rating" of "Excellent."[10]

Haas contested this rating, arguing that he "should have received" a rating of

"Outstanding."[11] According to Haas, he "received Outstanding since [he'd been] a

Lieutenant" and "nothing . . . changed in [his] performance from that time

period."[12] But Captain Bergen explained that "the security issue of him going

through the metal detector . . . might have affected [Haas's] security ratings."[13]

---

[7]   Doc. 23-9, Ex. I (Aug. 25, 2014 Bergen Decl.) at 2, 6; Doc. 23-18, Ex. R (Apr. 10, 2013 Evaluation) at 1.

[8]   Doc. 23-18, Ex. R (Apr. 10, 2013 Evaluation) at 1.

[9]   *Id*.

[10]  *Id*. Please note, BOP employees (including Haas) occasionally refer to the "Excellent" rating as an "Exceeds" rating. *See* Doc. 23-3, Ex. C (July 9, 2014 Haas Decl.) at 18 ("[Q]. [C]an you explain what the BOP's rating system is? A. Yes, Outstanding; Exceeds; Satisfactory; and then Minimal[ly] Satisfactory."); Doc. 23-9, Ex. I (Aug. 25, 2014 Bergen Decl.) at 6 ("Q. What rating did [Haas] receive on that evaluation? A. He was rated as an exceeds overall.").

[11]  Doc. 23-3, Ex. C (July 9, 2014 Haas Decl.) at 20.

[12]  *Id*.

[13]  Doc. 23-9, Ex. I (Aug. 25, 2014 Bergen Decl.) at 7.

Additionally, Bergen stated that "a lot of [Haas's] assignments weren't turned in on time," which similarly "would [have] affect[ed] his [Organizational Results] rating."[14]

On August 2, 2013, the Warden at FCI Allenwood, Monica Recktenwald, notified Haas via letter that he would be suspended for one day on August 5, 2013, for violating security screening procedures.[15] Two days later, Haas learned that he would be rotated from FCI Allenwood to the United States Penitentiary, a separate facility on the Allenwood Federal Correctional Complex.[16] Warden Recktenwald explained that lieutenants were rotated among the Correctional Complex's facilities every quarter and that they moved Haas because "they needed more senior lieutenants at the penitentiary."[17]

Haas alleges that the following month, he sustained an on-the-job injury while working at the Penitentiary.[18] Specifically, Haas claims that "[h]e twisted his back while running to an emergency assistance call," resulting in "soreness and sharp pain in [his] upper back."[19] After the injury, Haas met with a doctor, who

---

[14]   *Id*. at 8.
[15]   Doc. 23-5, Ex. E (Aug. 19, 2014 Recktenwald Decl.) at 6–7.
[16]   *Id*. at 4–7.
[17]   *Id*. at 5.
[18]   Doc. 23-3, Ex. C (July 9, 2014 Haas Decl.) at 6; *see also* Doc. 23-6, Ex. F (Heath Decl.) at 3–4.
[19]   Doc. 23-6, Ex. F (Aug. 22, 2014 Heath Decl.) at 4; *see also* Doc. 23-10, Ex. J (Sept. 28, 2015 Haas Decl.) at 4–5 ("Q. How did you become physically impaired? A. While responding to an incident at USP Allenwood. Q. Was it work related? A. Yes. Q. And you just responded to that. Please provide detailed information. A. Basically, I was responding to an incident and my back twisted and the muscles all tightened in my back.").

imposed the following restrictions: "[n]o running; no lifting; no inmate contact."[20] Haas then filed an Office of Worker's Compensation claim and was on medical leave from September 7, 2013, through March 5, 2014.[21]

On September 21, 2013—less than a month after his alleged injury and while off work because of it—Haas participated in a community "pistol shoot."[22] During this event, participants competed in a "shooting match" that was divided into stages, with "each stage of the event requir[ing] the participants to engage in certain activities."[23] At one stage, participants "had to run and engage some targets and then drag a [35-pound] dummy back to a certain point and then engage some more targets."[24] Haas "participated in and completed all four stages of [the] pistol shooting event," including the stage requiring him to "bend over, lift up a dummy, and drag it approximately ten to fifteen feet."[25] Haas explained that this "had nothing to do with work at all"; it was instead a "private event in the community."[26]

---

[20] Doc. 23-3, Ex. C (July 9, 2014 Haas Decl.) at 36.

[21] *Id*. at 10 ("Q. Okay. So were you completely off duty for a period of time. A. Yes. Q. Do you remember when that was? A. From probably September 7th through March 5th.").

[22] *Id*. at 37.

[23] Doc. 23-6, Ex. F (Aug. 22, 2014 Heath Decl.) at 6.

[24] *Id*.

[25] Doc. 23-10, Ex. J (Sept. 28, 2015 Haas Decl.) at 14; *see also* Doc. 23-3, Ex. C (July 9, 2014 Haas Decl.) at 36 ("Q. And how did you allegedly violate these restrictions on September 21st? A. They're saying there was a dummy[;] they're saying I picked up the dummy to drag it. Q. And did you? A. I picked up the hand of the dummy and drug it, yes.").

[26] Doc. 23-3, Ex. C (July 9, 2014 Haas Decl.) at 37.

One of Haas's colleagues at the Allenwood Penitentiary, Special Investigative Agent Corey Heath, also participated in the community pistol shoot.[27] Although Heath "didn't actually see [Haas] perform any of the tasks," the two men spoke after the event, and Haas told Heath "he thought he had done well, which was later substantiated when the score sheets came out."[28] Heath was aware that Haas filed an injury report earlier that month, so after the event, he reported Haas's participation in the pistol shoot to the warden at the Allenwood Penitentiary, Donna Zickefoose.[29] Based on Heath's report, dated September 24, 2013, Warden Zickefoose referred the matter to the Office of Internal Affairs for investigation.[30]

On September 27, 2013, Haas contacted a Counselor in the BOP's Equal Employment Opportunity ("EEO") office, claiming race, age, and disability discrimination.[31] Additionally, Haas reported that he was "retaliated against for reporting," in October 2012, "off-duty misconduct of a former (now retired) Warden."[32] Haas claimed that the "management" at the Allenwood Correctional Complex "discriminated and retaliated against him" by giving him a performance rating of "Excellent" (rather than "Outstanding"), suspending him in August 2013,

---

[27]   Doc. 23-6, Ex. F (Aug. 22, 2014 Heath Decl.) at 5.
[28]   *Id*. at 7.
[29]   *Id*. at 5–8.
[30]   *See* Doc. 23-4, Ex. D (Aug. 27, 2014 Feltman Decl.) at 9 ("Q. Do you know who referred [Haas] for investigation? A. I would say it had to be the Warden, Warden Zickefoose probably signed the report.").
[31]   Doc. 23-14, Ex. N (EEO Counselor's Report) at 3.
[32]   *Id*.

reassigning him from FCI Allenwood to the Allenwood Penitentiary, and documenting his attendance at the pistol shoot.[33] The EEO Counselor issued Haas a Notice of Right to File on December 12, 2013.[34]

On January 2, 2014, Haas filed a formal Complaint with the United States Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on race (white), age (42), and disability (unspecified)[35] as well as reprisal.[36] He did not claim discrimination on the basis of sex.[37]

That same month, Special Investigative Agent James Fosnot opened an investigation into Haas's worker's compensation claim—examining, in light of Haas's participation in the pistol shoot, whether the claim was meritorious.[38] Agent Fosnot completed his investigation that February and concluded that Haas's worker's compensation claim was fraudulent.[39]

In April 2014, the BOP's EEO office informed Haas that because he "closed EEO counseling with the EEO counselor" on his claims of discrimination related to the August 2013 suspension and reassignment from FCI Allenwood to the

---

[33] *Id*. Haas also claimed that he was discriminated against when he was removed from the "SORT" team. *Id*. Because Haas did not raise this matter in his Complaint, *see* Doc. 1, it has no bearing on the instant motion.

[34] 23-14, Ex. N (EEO Counselor's Report) at 2.

[35] Haas claimed that the work injury he suffered in September 2013 constituted his "disability"; he acknowledged that the physical impairments related to this injury were temporary. Doc. 23-3, Ex. C (July 9, 2014 Haas Decl.) at 5–7.

[36] Doc. 23-13, Ex. M (EEO Compl.) at 1–4.

[37] *Id*.

[38] Doc. 23-7, Ex. G (Aug. 22, 2014 Fosnot Decl.) at 5–9.

[39] *Id*. at 10.

Allenwood Penitentiary, it deemed the allegations "abandoned."[40] The EEO office noted that "abandoned allegations cannot be raised in another EEO Complaint and as such, are dismissed for failure to state a claim."[41]

On December 1, 2017, the BOP filed a motion for summary judgment on Haas's EEO Complaint.[42] EEOC Administrative Judge Dawn M. Edge granted the BOP's motion on January 23, 2018, finding that Haas could not substantiate a claim for discrimination because of race, age, disability, or reprisal based on his performance evaluation and the fraud investigation into the pistol shoot.[43] The Department of Justice Complaint Adjudication Office upheld the summary judgment order, and the ruling was affirmed on appeal by the EEOC's Office of Federal Operations.[44]

On December 17, 2019, Haas filed the instant suit against the BOP, the Department of Justice, and the Attorney General (collectively, the "Government").[45] In his Complaint, Haas included only two counts: Count I – Sexual Discrimination; and Count II – Retaliation.[46] Unlike the EEO Complaint, the federal Complaint did not include claims of discrimination based on race, age, or disability.

---

[40] Doc. 23-16, Ex. P (Apr. 3, 2014 Letter from EEO Office) at 7–9.
[41] *Id*. at 9.
[42] Doc. 23-19, Ex. S (EEOC Decision) at Attachment A.
[43] *Id*. at 2 ¶¶ 1 (a), (b).
[44] Doc. 23 ¶¶ 45–46.
[45] Doc. 1.
[46] *Id*. ¶¶ 39–57.

The Government filed a motion for summary judgment on August 23, 2021.[47] That motion has been fully briefed and is now ripe for disposition.[48]

## II.    LAW

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[49] Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[50] A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[51] Conversely, to survive summary judgment, a plaintiff must "point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[52]

The party requesting summary judgment bears the initial burden of supporting its motion with evidence from the record.[53] When the movant properly supports its motion, the nonmoving party must then show the need for a trial by

---

[47]    Doc. 16.
[48]    *See* Doc. 23; Doc. 24; Doc. 26.
[49]    Fed. R. Civ. P. 56(a).
[50]    *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).
[51]    *Clark*, 9 F.3d at 326.
[52]    *Id.*
[53]    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[54] The nonmoving party will not withstand summary judgment if all it has are "assertions, conclusory allegations, or mere suspicions."[55] Instead, it must "identify those facts of record which would contradict the facts identified by the movant."[56]

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[57] the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[58] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion."[59] Finally, although "the court need consider only the cited materials, . . . it may consider other materials in the record."[60]

---

[54] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[55] *Betts v. New Castle Youth Development Center*, 621 F.3d 249, 252 (3d Cir. 2010).

[56] *Port Authority of N.Y. and N.J. v. Affiliated FM Insurance Co.*, 311 F.3d 226, 233 (3d Cir. 2002) (quoting *Childers v. Joseph*, 842 F.2d 689, 694–95 (3d Cir. 1988)).

[57] *Liberty Lobby*, 477 U.S. at 252 (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871)).

[58] *Razak v. Uber Technologies, Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).

[59] Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613–14 (3d Cir. 2018).

[60] Fed. R. Civ. P. 56(c)(3).

## III.   ANALYSIS

### A.   Sexual Discrimination (Count I)

The Government asks the Court to grant summary judgment on Count I for two reasons: (1) Haas failed to exhaust his administrative remedies before bringing this claim in federal court; and (2) the evidence does not support a claim for sex discrimination. Although Haas argues that the claim should proceed, he offers no factual or legal basis for this position. Accordingly, the Government's motion for summary judgment as to Count I is granted.

#### 1.   Failure to Exhaust

First, the Government notes that Haas did not assert sex discrimination in any of his claims with the EEOC.[61] This alone necessitates summary judgment as to Count I.

As the Third Circuit explained in *Wilson v. United States Postal Service*, "it is a basic tent of administrative law" that "[b]efore bringing a Title VII claim," a federal employee alleging discrimination in the workplace "must exhaust all required administrative remedies."[62] Specifically, the employee must contact a Counselor with his agency's EEO office within 45 days of the alleged discriminatory conduct or adverse employment action.[63] If the matter cannot be resolved, the Counselor will inform the employee of his right to file an

---

[61]   Doc. 24 at 15–17.
[62]   814 F. App'x 719, 721 (3d Cir. 2020).
[63]   29 C.F.R. § 1614.105(a)(1).

administrative complaint,[64] and the employee then has fifteen days to file.[65] If a plaintiff fails to follow this administrative process, he cannot maintain a Title VII discrimination claim in federal court.[66]

In his initial complaint with the EEO Counselor, Haas claimed race (white), age (42), and disability (physical) discrimination as well as reprisal.[67] Haas reiterated these claims in his formal EEO Complaint.[68] He did not, however, include any mention of sex discrimination.

Despite this, Haas asserts (without citation or reference to any filing with the EEOC) that "[t]he evidence of record would evince that [he] has, in fact, exhausted all remedies relating to the employment discrimination claims."[69] That won't do. Before the Court is a motion for summary judgment—not a motion to dismiss. At this juncture, Haas bears the burden of "identify[ing] those facts of record which would contradict the facts identified by the [Government]" showing that Haas failed to pursue a sex discrimination claim with the EEOC; simply asserting that the evidence of record *would* establish that he exhausted his administrative

---

64   29 C.F.R. § 1614.105(d).
65   29 C.F.R. § 1614.106(b).
66   *See Wilson*, 814 F. App'x at 721 ("Failure to submit a charge within the requisite time period fails to preserve a claim and thus is subject to dismissal.").
67   Doc. 23, Ex. N (EEO Counselor's Report) at 57–58.
68   Doc. 23, Ex. M (EEO Complaint).
69   Doc. 26 at 9.

remedies, without identifying the relevant facts at issue, is insufficient to survive summary judgment.[70]

Because Haas never filed a claim for sex discrimination with the EEOC, he cannot now bring a sex discrimination claim in federal court. The Court therefore grants the Government's motion for summary judgment as to Count I (sex discrimination) for failure to exhaust all administrative remedies.

## 2.    Sex Discrimination

Independent of the exhaustion inquiry, Count I fails to survive summary judgment because Haas has not presented evidence to establish a claim for sex discrimination. Specifically, the summary judgment record does not contain an actionable adverse employment decision or evidence of disparate treatment. And even if it did, Haas cannot establish that the Government's proffered legitimate, nondiscriminatory explanations for its employment actions against him were simply pretextual.

### a.    *Prima Facie* Case of Discrimination

Here, the Government argues that none of the alleged employment decisions qualifies as an "adverse employment action" under Title VII and that the summary judgment record contains no evidence from which a reasonable juror could

---

[70]    *Port Authority of N.Y. and N.J.*, 311 F.3d at 233.

conclude that Haas's "similarly situated women co-workers were treated or would have been treated any differently."[71] The Court agrees.

When analyzing claims for sex discrimination under Title VII, courts apply the burden shifting analysis outlined by the Supreme Court of the United States in *McDonnell Douglas Corp. v. Green*.[72] Under this analysis, the plaintiff "bears the initial burden of establishing a *prima facie* case by a preponderance of the evidence."[73] To satisfy this burden, the plaintiff must show the following: (1) he was a member of a protected class; (2) he was performing his job satisfactorily; (3) he suffered an adverse employment action; and (4) similarly situated employees of the opposite sex were treated more favorably.[74]

For the third element—"adverse employment action"—the United States Court of Appeals for the Third Circuit explains that Title VII "do[es] not provide relief for unpleasantness that may be encountered in the workplace"; rather, it "provide[s] a remedy only if discrimination seriously and tangibly altered the employee's ability to perform the job or impacted the employee's job benefits."[75] Put differently, the employment action must be "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of

---

[71]  Doc. 24 at 18–19.
[72]  411 U.S. 792, 802 (1973).
[73]  *Sarullo v. U.S. Postal Service*, 352 F.3d 789, 797 (3d Cir. 2003) (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993)).
[74]  *See Summy-Long v. Pennsylvania State University*, 226 F. Supp. 3d 371, 395 (M.D. Pa. 2016), *aff'd*, 715 F. App'x 179 (3d Cir. 2017).
[75]  *Walker v. Centocor Ortho Biotech*, 558 F. App'x 216, 219 (3d Cir. 2014).

employment."[76] Accordingly, courts generally hold that "[a] negative [performance] evaluation, by itself, is not an adverse employment action."[77] Similarly, "investigations, separate from any negative consequences that may result from them, also do not generally constitute adverse employment actions."[78]

In his Complaint, Haas identifies three employment actions relevant to his sex discrimination claim: (1) the April 2013 employment evaluation[79]; (2) the fraud investigation into the "pistol shoot"[80]; and (3) the August 2013 suspension.[81] But Haas presents no evidence that either the employment evaluation or the investigation into his "pistol shoot" adversely affected his compensation or the terms, conditions, or privileges of his employment, and the August 2013 suspension is no longer a live claim.

First, Haas asserts that "[s]ince the 'exceeds' evaluation, there had been numerous GS-12 job opening[s] posted[;] however, [he] never received any promotion due to his no longer being considered 'qualified.'"[82] But he cites no evidence substantiating this claim—no evidence of job listings; no evidence that he

---

[76] *Story v. Burns International Security Services*, 390 F.3d 760, 764 (3d Cir. 2004) (internal quotation marks omitted).

[77] *Walker*, 558 F. App'x at 220.

[78] *Flores v. Charlton*, 2019 WL 3801951, *4 (E.D. Pa. Aug. 13, 2019); *see also Boandl v. Geithner*, 752 F. Supp. 2d 540, 564 (finding that a referral for an investigation, which had no bearing on the terms of the plaintiff's employment, did not constitute an adverse employment action).

[79] Doc. 1 ¶ 23.

[80] *Id*. ¶¶ 30–33.

[81] *Id*. ¶ 25.

[82] Doc. 26 at 5.

applied; no evidence that he was rejected because of this performance evaluation. At this stage in the litigation, bare assertions devoid of evidentiary support are insufficient to sustain a claim.[83]

Second, in his opposition to the Government's motion for summary judgment, Haas inexplicably offers no argument for why the investigation into the pistol shoot constitutes an adverse employment action.[84] Indeed, Haas makes no reference to the pistol shoot or related investigation.[85] If Haas is unwilling to mount a defense to save his claim, the Court will not do it for him. Absent some evidence that the investigation affected the "compensation, terms, conditions, or privileges of [Haas's] employment," the Court cannot conclude that it qualifies as an "adverse employment decision" under Title VII.[86]

Third, as the EEO office held in April 2014, Haas abandoned his claims of discrimination related to the August 2013 suspension.[87] Haas does not dispute this.[88] As the Third Circuit held in *Katz v. Winter*, once a plaintiff abandons or

---

[83]  *Walker*, 558 F. App'x at 220 (holding that "negative evaluation" did not "constitute [an] adverse employment action[]" because "the record does not support the conclusory description [the plaintiff] affixes to the evaluation, and she has offered no evidence to support a finding that her conditions of employment were impacted by it").

[84]  *See* Doc. 1.

[85]  *Id*.

[86]  *Story*, 390 F.3d at 764.

[87]  Doc. 23-16, Ex. P (Apr. 3, 2014 Letter from EEO Office) at 7–9.

[88]  In his opposition, Haas claims only that "[t]he evidence of record would evince that [he] has, in fact, exhausted all remedies relating to the employment discrimination claims." Doc. 26 at 9. But this assertion, which is not supported by a citation to any evidence in the record, does not directly respond to or refute the evidence the Government presents that Haas abandoned this portion of his claim. *See Walker*, 558 F. App'x at 220 (granting summary judgment on sex

waives his claims at an administrative level, he cannot bring those claims to the district court.[89]

Moreover, even if Haas could establish that he suffered an adverse employment action, he has not shown that any such action was the product of sex discrimination—i.e., that similarly situated employees of the opposite sex were treated more favorably. The summary judgment record contains no evidence on the employment evaluations that women lieutenants at FCI Allenwood received, let alone evidence of how any female lieutenants with similar workplace infractions were evaluated. The record is likewise devoid of any evidence showing that similarly situated women lieutenants were treated differently than Haas regarding the investigation into his fraudulent worker's compensation claim or the suspension for failure to adhere to security protocols.

Because the summary judgment record does not contain evidence of any adverse employment action or disparate treatment by sex, Haas has failed to establish a *prima facie* case of sex discrimination. That is another independent basis for granting summary judgment.

---

discrimination claim where plaintiff "offered no evidence to support a finding that her conditions of employment were impacted by [the alleged employment action]").

[89]   303 F. App'x 125, 126 (3d Cir. 2008).

## b.    Pretext for Discrimination

Even if Haas could establish a *prima facie* case of discrimination, summary judgment as to Count I would still be appropriate because he has not refuted the Government's stated reasons for its actions affecting him.

Once a plaintiff makes a *prima facie* case, the burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]."[90] Specifically, the employer must "clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action."[91]

If the defendant meets this burden, "the presumption of discriminatory action raised by the *prima facie* case is rebutted" and the burden shifts back to the plaintiff.[92] To sustain the claim, "[t]he plaintiff then must establish by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination, and not the real motivation for the unfavorable job action."[93] Specifically, the plaintiff must "provid[e] evidence that would allow a fact finder reasonably to (1) disbelieve the employer's articulated legitimate

---

[90]   *Sarullo*, 352 F.3d 797 (citing *McDonnell Douglas*, 411 U.S. at 802).

[91]   *St. Mary's Honor Center*, 509 U.S. at 507 (internal quotation marks and emphasis omitted).

[92]   *Sarullo*, 352 F.3d at 797 (citing *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255 (1981)).

[93]   *Id*.

reasons; or (2) believe that an invidious discriminatory reason was more likely than not the motivating or determinative cause of the employer's action."[94]

Here, the Government identifies legitimate, nondiscriminatory reasons for all employment actions at issue. First, the Government explains that Haas received an "Excellent" rating—rather than the highest rating of "Outstanding"—for his performance from 2012 to 2013 because he was being investigated for violating security protocols and consistently failed to complete his assignments on time.[95] Second, the investigation into the "pistol shoot" was well founded: Haas filed a worker's compensation claim based on a workplace injury that prevented him from running and lifting, but at a non-work event less than a month after the injury, Haas participated in a competition where he ran from one location to the next and dragged a 35-pound body dummy between shooting his pistol at designated targets.[96] Third, the warden at FCI Allenwood stated that Haas received a one-day suspension in August 2013 because he failed to follow and enforce the facility's safety protocols.[97]

Haas offers no evidence to undermine these legitimate, nondiscriminatory reasons for the three alleged employment actions. Indeed, in his opposition, Haas does not address these explanations or even use the word "pretext." Again, that

---

[94]   *Id.* at 800 (internal quotation marks and citation omitted).
[95]   *See* Doc. 23-9, Ex. I (Aug. 25, 2014 Bergen Decl.) at 7–8.
[96]   Doc. 23-6, Ex. F (Aug. 22, 2014 Heath Decl.) at 6.
[97]   Doc. 23-5, Ex. E (Aug. 19, 2014 Recktenwald Decl.) at 6–7.

won't do. The Government's motion for summary judgment as to Count I (sex discrimination) is granted.

### B.     Retaliation (Count II)

The Government argues that Count II similarly cannot survive summary judgment because Haas fails to present evidence sufficient to sustain a claim for retaliation. Specifically, the Government asserts that Haas has not established (1) he engaged in a protected activity prior to any BOP employment action, (2) any such move by the BOP constituted an "adverse employment action," and (3) the BOP's proffered explanations for its actions affecting Haas were pretextual.[98] Again, the Court agrees with the Government.

To prevail on a claim for retaliation under Title VII, an employee must prove that "(1) he was engaged in protected activity; (2) he was subject to an adverse job action subsequent to or contemporaneous with such activity; and (3) there is a causal link between the protected activity and the subsequent adverse job action."[99] As with claims of illegal discrimination under Title VII, if an employer articulates a legitimate reason for the adverse employment action, the plaintiff "must [then] produce sufficient evidence to allow a reasonable fact finder to conclude that the proffered reasons for [the action] are a pretext."[100]

---

[98]   Doc. 24 at 21–23.

[99]   *Sarullo*, 352 F.3d at 800.

[100]   *Id*. at 799.

Here, Haas acknowledges that before he contacted the EEO Counselor in September 2013 regarding the allegations underlying this case, he had no prior EEO activity.[101] Accordingly, the only action Haas took prior to initiating the EEO complaint process that could potentially qualify as a "protected activity" is the complaint he purportedly made in October 2012 about a separate warden who has no relation to the events at issue here.[102] But Haas does not allege or provide evidence that any of the BOP officials relevant to this case knew of this complaint. Absent evidence that the relevant BOP officials were aware of the 2012 complaint, Haas cannot prove a causal link between the complaint and the alleged adverse actions.[103]

Further, as explained, none of the alleged employment decisions affecting Haas qualify as "adverse employment actions" under Title VII, and Haas presents no evidence from which a factfinder could reasonably conclude that the Government's explanations for its actions were pretextual. Accordingly, Count II (retaliation) cannot survive summary judgment.

---

[101] Doc. 23 ¶ 23 (citing Doc. 23, Ex. N (EEO Counselor's Report) at 59, 61; Doc. 23, Ex. Q (Aug. 28, 2014 Agency Email) at 00347).

[102] Doc. 23-14, Ex. N (EEO Counselor's Report) at 3.

[103] *See Sarullo*, 352 F.3d at 801 (holding that district court properly granted summary judgment on plaintiff's Title VII retaliation claim because the plaintiff "provided no evidence to rebut [his supervisor's] declaration that he was unaware of [the plaintiff's] EEO activity when he made his decision not to reinstate [the plaintiff]"); *see also Ambrose v. Township of Robinson, Pennsylvania*, 303 F.3d 488, 493 (3d Cir. 2002) ("It is only intuitive that for protected conduct to be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct." ).

## IV.   CONCLUSION

William Haas is a middle-aged white man with no discernable disability. He claims to be the victim of discrimination—initially, based on his age (42), race (white), and disability (unidentified); later, based on his sex (male). But he offers no allegations and presents no evidence of actionable discrimination. Moreover, by modifying his case mid-stream, abandoning certain claims and presenting others, in the first instance, in federal court, Haas failed to follow the prescribed procedure for advancing claims under Title VII. Accordingly, this suit—illogically conceived and inconsistently pursued—cannot proceed. The Government's motion for summary judgment is granted.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge